### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *ex rel*. ROBERT STILLWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:19-cv-00545-LMB-TCB |
| v. | ) | |
| | ) | |
| KPMG LLP, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT KPMG LLP's MOTION TO DISMISS
### AND SUPPORTING MEMORANDUM OF LAW

Defendant KPMG LLP, in accordance with Rules 8(a), 9(b), and 12(b)(6) of the Federal

Rules of Civil Procedure, moves to dismiss the Complaint for failure to state a claim under the

False Claims Act, 31 U.S.C. §§ 3729 *et seq.*  The accompanying memorandum of law sets forth

the grounds.

/s/ Edmund P. Power
Edmund P. Power VSB #65841
Michael R. Pauzé (*pro hac vice*)
Kenneth Y. Turnbull (*pro hac vice*)
David P. Mattern (*pro hac vice*)

**KING & SPALDING LLP**
1700 Pennsylvania Ave., NW
Washington, D.C. 20006
Tel: (202) 737-0500
Fax: (202) 626-3737
epower@kslaw.com
mpauze@kslaw.com
kturnbull@kslaw.com
dmattern@kslaw.com

*Counsel for Defendant KPMG LLP*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

      A.     SMI's Initial Staffing Complaints (2006) ............................................ 4

      B.     SMI's Further Staffing Complaints (2014) .......................................... 4

      C.     The Agency's Rejection of SMI's Complaints ..................................... 5

      D.     General Reference to Claims for Payment ........................................... 6

      E.     Government Declines to Join the Lawsuit ............................................ 6

PLEADING STANDARDS ................................................................................................. 6

ARGUMENT ...................................................................................................................... 8

I.     THE COMPLAINT SHOULD BE DISMISSED UNDER RULES 8 AND
     9(b) .......................................................................................................................... 8

      A.     The Complaint fails to sufficiently plead claims for payment .............. 8

      B.     The Complaint fails to sufficiently plead that claims were false .......... 11

      C.     The Complaint fails to sufficiently plead materiality ........................... 14

      D.     The Complaint fails to plead facts supporting scienter ........................ 16

II.    THE STATUTE OF REPOSE BARS RECOVERY ON ANY CLAIMS
     BEFORE MAY 3, 2009 ......................................................................................... 18

CONCLUSION .................................................................................................................. 20

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................... 6, 7, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................... 6, 7, 17

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*,
   139 S. Ct. 1507 (2019) ................................................................. 18, 19

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) ..................................................... 7, 8, 9, 14

*Harrison v. Westinghouse Savannah River Co.*,
   352 F. 3d 908 (4th Cir. 2003) ...................................................... 8, 14

*United States ex rel. Bachert v. Triple Canopy, Inc.*,
   321 F. Supp. 3d 613 (E.D. Va. 2018) ................................................. 14

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ......................................................... 18

*United States ex rel. Carter v. Halliburton Co.*,
   No. 08cv1162 (JCC), 2009 WL 90134 (E.D. Va. Jan. 13, 2009) .......................... 9

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
   290 F.3d 1301 (11th Cir. 2002) ........................................................ 10

*United States ex rel. Complin v. N.C. Baptist Hosp.*,
   818 F. App'x 179 (4th Cir. 2020) ...................................................... 17

*United States ex rel. DeCesare v. Americare In Home Nursing*,
   757 F. Supp. 2d 573 (E.D. Va. 2010) ................................................... 17

*United States ex rel. DRC, Inc. v. Custer Battles, LLC*,
   472 F. Supp. 2d 787 (E.D. Va. 2007) ................................................... 11

*United States ex rel. Frascella v. Oracle Corp.*,
   751 F. Supp. 2d 842 (E.D. Va. 2010) ................................................... 18

*United States ex rel. Garzione v. PAE Gov't Servs., Inc.*,
   164 F. Supp. 3d 806 (E.D. Va. 2016) .................................................... 9

*United States ex rel. Garzione v. PAE Gov't Servs., Inc.*,
   670 F. App'x 126 (4th Cir. 2016) ....................................................... 9

*United States ex rel. Grant v. United Airlines Inc.*,
   912 F.3d 190 (4th Cir. 2018) ................................................................. 7, 8, 9, 10

*United States ex rel. Hyatt v. Northrop Corp.*,
   91 F.3d 1211 (9th Cir. 1996) ........................................................................ 19

*United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
   707 F.3d 451 (4th Cir. 2013) ............................................................... 7, 8, 9, 10

*United States ex rel. Pogue v. Diabetes Treatment Centers of Am.*,
   474 F. Supp. 2d 75 (D.D.C. 2007) ................................................................ 19

*United States ex rel. Rostholder v. Omnicare, Inc.*,
   745 F.3d 694 (4th Cir. 2014) ........................................................................ 17

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) ................................................................... *passim*

*United States v. Rivera*,
   55 F.3d 703 (1st Cir. 1995) ............................................................................ 8

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016) ............................................................................ *passim*

**Statutes, Regulations, & Rules**

31 U.S.C. § 3729 ....................................................................................... 8, 16

31 U.S.C. § 3731 ..................................................................................... 18, 19

48 C.F.R. § 16.202 ....................................................................................... 15

48 C.F.R. § 252.217-7001 .............................................................................. 18

Fed. R. Civ. P. 8 ................................................................................... 8, 9, 15

Fed. R. Civ. P. 9(b) ................................................................................. *passim*

**Other Authority**

26 R. Lord,
   Williston on Contracts (4th ed. 2003) ............................................................ 14

## PRELIMINARY STATEMENT

This private plaintiff's False Claims Act (the "Act") suit should be dismissed.  For much of the last decade, KPMG LLP ("KPMG") has been providing audit-readiness services to the Defense Logistics Agency of the Department of Defense ("DLA" or "Agency").  *See* Plaintiff's May 3, 2019 Complaint (ECF No. 1) ("Compl.") ¶ 11.  The Plaintiff was an employee of another contractor, St. Michael's Inc. ("SMI"), which also worked on the contracts with the Agency.  In 2019, the Agency terminated SMI based on its failure to staff task orders appropriately.  The Plaintiff apparently blames KPMG for the staffing issues, but he seems to be the only one who does.  He took his complaints to the Agency, which rejected them.  Then he took his complaints (and evidence) to U.S. Attorney's Office for this District, which declined to join this action.  In a third, and equally futile, attempt, he now brings his complaints to this Court on behalf of the government that has twice dismissed them.  As discussed below, the government did so with good reason:  the Plaintiff's allegations fail to state a claim under the Act.

*First*, and most fundamentally, the Plaintiff does not allege with particularity the critical element of an action under the False *Claims* Act: the presentment of actual *claims* for payment to the government.  Federal Rule of Civil Procedure 9(b) requires that the plaintiff allege the who, what, when, where, and how of the alleged fraud.  Yet the instant Complaint does not allege the most basic of these particulars, such as who from KPMG made claims for payment; when any claims were made; where any claims to the government were made; and most importantly, the contents of claims for payment.  The Plaintiff's admission that he "cannot at this time identify all of the false claims for payment," Compl. ¶ 73, is the model of understatement.  Far from identifying *all* of the false claims, he has not identified *any*.  For this reason alone, the Complaint should be dismissed.

*Second*, the Plaintiff has not pleaded plausibly and with particularity another fundamental element under the *False* Claims Act:  that claims submitted to the government were false.  This failure is not surprising, because he has not described the contents of any claims at all—let alone with particularity.  The Complaint does not identify any government form or document that constitutes a claim for payment, or the particulars around such a claim, including its contents and how they were false.  Nor does it allege the details of KPMG's obligations, how those obligations were breached, and how any resulting claims were false.  Rather, the Plaintiff contends that KPMG treated SMI unfairly, complaining about the "division of labor" and "work allocation" between the two entities, Compl. ¶¶ 32, 34, 37, hardly a cause of action under the Act.

*Third*, the Plaintiff does not even pay lip service to materiality—a rigorous and demanding requirement to allege with particularity how the falsity would affect the government's payment decision.  Although far from clear, the Complaint seems to allege that KPMG caused SMI to take on a disproportionate share of the staffing in connection with unspecified contracts with the Agency.  *See, e.g.*, Compl. ¶¶ 37, 38, 46.  But it does not allege that the Agency's payment decisions turned on a particular allocation of staffing, or even on the number of personnel assigned to a task.  Under a fixed-price contract, for example, the number of staff would be immaterial to the Agency's payment decision.  Yet the Complaint offers no particulars on this point.  More than that, the Complaint *undercuts* any inference of materiality:  it alleges that the Agency knew of the Plaintiff's contentions, and continued to do business with KPMG.  That, the Supreme Court has explained, is "strong evidence" that the plaintiff has not alleged materiality.  *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2004 (2016).

*Fourth*, the Plaintiff does not plead facts supporting an inference that KPMG knew it submitted false claims for payment. Nor could he. Instead, he makes only generalized and conclusory allegations that KPMG acted with the required scienter. Even these allegations are implausible in the context of the Complaint as a whole. Pleading scienter requires more.

And *finally,* the Complaint reaches back to unspecified events in or about 2006, more than a decade before the *qui tam* action was filed. The False Claims Act's ten-year statute of repose bars any action for claims going back that far.

KPMG respectfully submits that the Complaint should be dismissed.

## **FACTUAL BACKGROUND**

The Plaintiff's Complaint arises out of agreements between DLA and KPMG and SMI to assist the Agency in preparing for federal audits. The Plaintiff alleges that KPMG was "inclu[ded] in the [Agency's] Audit Readiness Blanket Purchase Agreement ('BPA') contract vehicle." Compl. ¶ 11. Without identifying any specific contract, he asserts that KPMG "entered into the first contract to do Audit Readiness work at DLA in or about 2000." *Id.* ¶ 13. The Plaintiff then goes on to refer to "the Defense Logistics Agency Contract," which he defines as the "'DLA Contract.'" *Id.* ¶ 15. He does not include any information about the contract itself (such as a date or contract number), or any information about its terms, including the parties' respective obligations, the scope of work, or payment terms.

According to the Complaint, the Plaintiff's employer, SMI, became a subcontractor to KPMG in 2011. Then in 2014, SMI entered into a "Contractor Teaming Arrangement" with KPMG. *Id.* ¶¶ 14–16. The Complaint does not provide detail about the nature of SMI's business, its operations, or its personnel, or the teaming arrangement with KPMG.

### A.   SMI's Initial Staffing Complaints (2006)

The Plaintiff first alleges what appear to be a series of disagreements over staffing between KPMG and SMI beginning in 2006, even before KPMG engaged SMI as a subcontractor, and before the Plaintiff joined SMI.  *Id.* ¶¶ 16, 23–28.  He asserts that SMI's "staffing positions on the DLA Contract were required to be approved by KPMG," but that KPMG "rejected" qualified candidates with "little justification."  *Id.* ¶¶ 19, 20.  Unmoored to any date, the Complaint alleges that a KPMG employee instructed KPMG staff "to intentionally add surge hours and support to their task order proposals with the objective of recovering the revenue but with no intent to employ personnel to fill the hours."  *Id.* ¶ 25.  The Plaintiff does not elaborate on the basis for this observation regarding intent, allege whether such hours were in fact "added" and to what they were added, and if so, how any such addition affected the Agency's payment decisions, if at all.  Further, in or about 2006, the Complaint alleges, a KPMG director instructed others not to hire full-time equivalents "to fill vacant positions that had been proposed to the government as necessary to perform the work," *id*. ¶ 26, and KPMG "rejected highly qualified candidates for vacant positions," *id*. ¶ 27.  Again, the Plaintiff—who had not yet joined SMI at this time—does not elaborate on any contractual or other obligations to fill those positions, whether and to what extent this information was provided to the Agency, and whether it affected the Agency's payment decisions.

### B.   SMI's Further Staffing Complaints (2014)

Seven years later, in 2014, KPMG and SMI allegedly entered into a contractor teaming arrangement ("CTA") under the DLA contract because "the government required a small business partner in its Request for Proposal."  *Id.* ¶¶ 15, 29.  Under that arrangement, KPMG and SMI "had separate contracts with the Government and separate task orders were issued to each [entity]."  *Id.* ¶ 15.  The Plaintiff claims that KPMG submitted "a single proposal" on behalf of both KPMG and SMI and "was in total control of the relationship with the Government and everything to do with

4

the task orders issued to the CTA team." *Id*. ¶ 15.  He began working for SMI at about that time.  *See id*. ¶ 16.

The Plaintiff then makes a series of complaints largely about the allocation of staffing between KPMG and SMI.  In short, he alleges that KPMG unfairly made SMI perform a disproportionate amount of work.  He claims to have "discovered that the majority of the staff present were only working on SMI Task Orders and that minimal staff was assigned to KPMG's Task Orders."  *Id*. ¶ 48; *see also id*. ¶ 18 ("staffing issues"); *id*. ¶ 47 (referring to Plaintiff's "staffing analysis"); *id*. ¶ 34 (KPMG "as the CTA lead, controlled all hiring approvals and work allegation for work performed on the two separate task orders."); *id*. ¶ 49 (assigned staff "were not present"); *id*. ¶ 51 (asserting that "the majority of the staff was funded under [SMI's] portion of the work, and the majority of the KPMG funding was taken by KPMG as profit without cost of performance"); *id*. ¶ 60 (contrasting average cost per FTE between KPMG and SMI).

Finally, the Plaintiff accuses KPMG professionals of billing to DLA but working under multiple unspecified government contracts.  *Id*. ¶¶ 65–66.

### C.    The Agency's Rejection of SMI's Complaints

Apparently unhappy with the allocation of work, the Plaintiff in April 2019 notified the Agency of his purported staffing concerns, casting the blame on KPMG.  But the Agency saw it differently.  It terminated SMI—not KPMG—from the contract.  *Id*. ¶¶ 52–59, 67.  According to the Complaint, "[d]uring March and April of 2019, staffing become [sic] more of a talking point between [SMI] and the Government" due to SMI's "allegations of understaffing." *Id*. ¶ 52.  During that time, the Plaintiff "put more detail into weekly staffing reports to the Contracting Officer related to staffing issues," and "included qualified personnel by name in the staffing report," along with "KPMG delays and rejections of these qualified personnel in his reports to the government." *Id*. ¶¶ 53–54.

But far from taking KPMG to task, in April 2019 the Contracting Officer sent a "cure notice" to SMI for "fail[ing] to properly staff positions." *Id*. ¶ 57.  SMI disputed the point to the Contracting Officer, arguing that SMI had staffed "more than 80% of its required position[s], while KPMG had staffed less than 40% of the positions" under an unspecified task order. *Id*. ¶ 58.  Still, the Contracting Officer issued "termination for convenience notices" to SMI.  *Id*.  SMI's relationship with the Agency ended on April 30, 2019, when the Agency "terminated" all of SMI's work and "directed" that all SMI personnel "be removed from the worksite." *Id*. ¶ 67.  Without elaboration, the Plaintiff implausibly claims that KPMG somehow "pressured the Government to take action to terminate" SMI.  *Id*. ¶ 55.  Three days after the termination, on May 3, 2019, the Plaintiff filed this lawsuit against KPMG.

### D.    General Reference to Claims for Payment

After setting forth these scattershot allegations, near the end of the Complaint, the Plaintiff refers generally to resulting "false claims for payment," presumably to the Agency. *Id.* ¶ 73.  He asserts that "false claims were presented over numerous bid proposals, communications, claims, and documents, and over many years," *id.*, but he does not identify any.  Nor does he link his alleged staffing concerns with any actual claims submitted to the Agency.

### E.    Government Declines to Join the Lawsuit

Although the Department of Defense had rejected the Plaintiff's claims, he nonetheless filed this *qui tam* suit, apparently hoping that the Department of Justice would take a different view.  *See generally* Compl.  It didn't.

## PLEADING STANDARDS

To survive a motion to dismiss under Rule 8(a), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Factual allegations control whether a claim is plausible because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. Thus, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). Then even assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "judicial experience and common sense" to determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id*. at 679, 681. This requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

A claim under the False Claims Act also is governed by "Rule 9(b)'s stringent pleading standard." *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018). This requires that a plaintiff state with particularity the circumstances constituting fraud, including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc*., 707 F.3d 451, 455–56 (4th Cir. 2013) (internal quotation marks omitted). Courts in this Circuit have "adhered firmly to the strictures of Rule 9(b) in applying its terms to cases brought under the Act." *Id*. The purpose for this heightened standard is four-fold: (1) to ensure that the defendant has sufficient information to formulate a defense by providing notice of the alleged conduct; (2) to protect defendants from frivolous suits; (3) to eliminate fraud actions where all facts are learned after discovery; and (4) to protect defendants from harm to their goodwill and reputation. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). These considerations "apply with particular force in the context of the Act, given the

potential consequences flowing from allegations of fraud by companies who transact business with the government." *Nathan*, 707 F.3d at 456; *see also Grant*, 912 F.3d at 197 (these purposes "apply with special force" to claims under the Act.").

## ARGUMENT

The False Claims Act provides a cause of action against a person who "knowingly presents, or causes to be presented" to the United States government a "false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" submitted to the United States government, *id*. § 3729(a)(1)(B).

The Plaintiff appears to assert violations under both provisions. *See* Compl. ¶¶ 71 & 72. To state a claim under section (a)(1)(A), a plaintiff must allege: (1) the presentment of a claim, (2) that is false or fraudulent, (3) material to the government's payment decision, and (4) made with the requisite scienter. *See Escobar*, 136 S. Ct. at 1999, 2002. Section (a)(1)(B) also requires a materially false claim, along with (1) the making of a false statement or use of a false record, (2) that is material to that false claim. *See Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003). This the Plaintiff has not done.

## I.   THE COMPLAINT SHOULD BE DISMISSED UNDER RULES 8 AND 9(b).

### A.  The Complaint fails to sufficiently plead claims for payment.

For a false statement to be actionable, "it must be made as part of a false or fraudulent claim." *Grant*, 912 F.3d at 196. The claim itself is the essential element of the action. Liability under the Act "attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme." *Nathan*, 707 F.3d at 456; *see also Harrison*, 176 F.3d at 785 ("[T]he statute attaches liability, not to the underlying fraudulent activity . . ., but to the claim for payment." (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)). As a result, a

8

"central question in all [FCA] cases is whether the defendant presented a 'false or fraudulent claim' to the government," resulting in "a call upon the government fisc." *Harrison*, 176 F.3d at 785–86. A plaintiff cannot satisfy this requirement merely by alleging the existence of a fraudulent scheme and that false claims must have been presented to the government for payment. *Id.* Instead, Rule 9(b) requires that the plaintiff plead facts showing "that an actual false claim was presented to the government." *Nathan*, 707 F.3d at 457. Citing this stringent pleading standard, courts routinely dismiss complaints with insufficient particulars under the Act. *E.g.*, *Grant*, 912 F.3d at 196 (upholding dismissal of complaint that "fail[ed] to allege an impact on the government fisc with the requisite particularity to survive a motion to dismiss under Rule 9(b)'s heightened pleading standard"); *Nathan*, 707 F.3d at 458–59 (upholding dismissal where the complaint fell short of pleading standards in Rules 8 and 9(b)); *United States ex rel. Garzione v. PAE Gov't Servs., Inc.*, 164 F. Supp. 3d 806, 816 (E.D. Va. 2016) (dismissal of complaint for failing to meet Rule 9(b)'s heightened pleading requirements), *aff'd*, 670 F. App'x 126 (4th Cir. 2016) (per curiam); *United States ex rel. Carter v. Halliburton Co.*, No. 08cv1162 (JCC), 2009 WL 90134, at *5 (E.D. Va. Jan. 13, 2009) (same).

Here, the Plaintiff makes no effort to satisfy this critical requirement. The Complaint does not set forth the particulars regarding the time, place, maker, and content of any false claim for payment to the government. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citing *Harrison*, 176 F.3d at 776). Instead, the Complaint makes scattershot allegations of mismanagement over 68 paragraphs, and then baldly asserts that "false claims were presented over numerous bid proposals, communications, claims, and documents, and over many years." Compl. ¶ 73; *see also id.* ¶ 62 (alleging on "information and belief, this practice is being utilized on all federal contracts by KPMG to increase revenue and profit to result in more

than $1 billion dollars [sic] of false claims submitted for payment to the government"); *id.* ¶¶ 71–72 (alleging that KPMG presented "false or fraudulent claims" to the government, and made false statements "to induce the Government to approve and pay such false and fraudulent claims."). These assertions are wholly lacking in the particularity required by Rule 9(b).

The Plaintiff admits as much, acknowledging—fatally—that he "cannot at this time identify all of the false claims for payment that were caused by KPMG's conduct." *Id.* ¶ 73.  In this way, the Complaint attempts to do precisely what *Nathan* prohibits: it purports to allege a fraudulent scheme and then makes conclusory allegations that false claims *must have been* submitted.  *See Nathan*, 707 F.3d at 456 (rejecting the argument that "a relator need only allege the existence of a fraudulent scheme that supports the inference that false claims were presented to the government for payment").  Such "an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion."  *Id.* at 457 (internal quotation marks omitted).  And "when a relator fails to plead plausible allegations of presentment, the relator has not alleged all the elements of a claim under the Act."  *Id.* at 456 (citing *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002)).

This failure is not excused by the Plaintiff's protestation that he "has no control over such documents, and has no access to the records in KPMG's possession." Compl. ¶ 73.  This stringent pleading standard applies despite the "practical challenges that [plaintiffs] may face, especially where billing practices and records are not readily ascertainable to certain categories of employees within a company." *Grant*, 912 F.3d at 197.  That is because a claim brought under the Act seeking to rely on facts "learned through the costly process of discovery . . . is precisely what Rule 9(b) seeks to prevent." *Nathan*, 707 F.3d at 456 (quoting *Wilson*, 525 F.3d at 380).  This defect alone warrants dismissal of the Complaint.

10

**B.  The Complaint fails to sufficiently plead that claims were false.**

Having failed to describe with any detail the contents of any claims, it follows that the Complaint also falls short by failing to sufficiently allege how claims were *false*.  To violate the Act, a statement "must represent an objective falsehood."  *Wilson*, 525 F.3d at 376.  Thus, a "legitimate estimate by a contractor of work performed is not a false claim."  *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 472 F. Supp. 2d 787, 797 (E.D. Va. 2007) (internal quotation marks omitted).  Similarly, "allegations of poor and inefficient management of contractual duties are not actionable."  *Wilson*, 525 F.3d at 377 (internal quotation marks omitted).  Nor may a plaintiff "base a fraud claim on nothing more than his own interpretation of an imprecise contractual provision."  *Id.* at 378.  These kinds of allegations do not suffice because "[t]o hold otherwise would render meaningless the fundamental distinction between actions for fraud and breach of contract."  *Id.*

The Complaint has not pleaded plausibly and with particularity facts sufficient to establish that any statements or claims are false.  Nor could it.  The Plaintiff does not even set forth the particular terms or contents of a statement or claim that KPMG submitted to the government under any contract or task order.  For the most part, the Plaintiff's allegations relate to the perceived unfair allocation of work between KPMG and SMI under the teaming arrangement, not to any alleged falsehood.  *See, e.g.*, Compl. ¶ 34 (KPMG "as the CTA lead, controlled all hiring approvals and work allegation for work performed on the two separate task orders."); *id.* ¶ 49 (assigned staff "were not present"); *id.* ¶ 50 ("discrepancy in funding and staffing"); *id.* ¶ 51 (asserting that "the majority of the staff was funded under [SMI's] portion of the work, and the majority of the KPMG funding was taken by KPMG as profit without cost of performance"); *id.* ¶ 60 (contrasting average cost per FTE between KPMG and SMI).

11

To the extent Plaintiff does allege falsehood, his allegations are conclusory and lack the particulars required by Rule 9(b).  For example, his assertion that "KPMG falsely represented to the United States Government the number of employees it employs on its task orders and contracts," Compl. ¶ 12, is untethered to any particular time, place, or maker.  The assertion that KPMG proposed a "number of employees" that it "had no intention of actually hiring" suffers from the same problem.  *See id*.  The naked assertion that KPMG "double billed" for employees working on other government contacts, "falsely listing these employees in reports and invoices to the government," *id*., begs the key questions under Rule 9(b):  Which reports?  Which invoices?  When were they submitted?  And what in particular did they say that was objectively false?  The Complaint does not say.

This fatal flaw runs through the Complaint, for both the 2006 allegations and the allegations after the Plaintiff joined SMI in 2014.  As to the 2006 allegations, the Complaint alleges that a KPMG employee instructed staff to "intentionally add surge hours and support to their task order proposals" but "with no intent to employ personnel to fill the hours." Compl. ¶ 25.[1]  But it provides no particular date, does not explain "surge hours," does not identify which task orders, and does not describe the content of those task orders, or even allege that KPMG followed through and did not fill whatever requirements existed with respect to "surge hours."  *Cf. id.*  (making conclusory assertions).  The assertion that staff was instructed "to not hire full time equivalents ('FTEs') to fill vacant positions that had been proposed to the government as necessary to perform the work" is similarly bereft of particulars such as the date of such an instruction and proposal, the content of the proposal, and the content of a resulting claim.  *Cf. id.* ¶ 26.

---

[1] As discussed in Section II below, an action based on unspecified claims submitted at this time is barred by the ten-year statute of repose.

The allegations relating to actions purportedly taken in and after 2014 fare no better.  The bulk of these assertions likewise appear to be staffing complaints.  For example, the Plaintiff states that he obtained a "monthly list of KPMG staff subcontracted" to SMI task orders and "discovered that the majority of the staff present" were working on SMI task orders and that "minimal staff" were assigned to KPMG's task orders.  *Id.* ¶¶ 47–48.  *See also, e.g.*, *id.* ¶ 51 ("the majority of the staff was funded under the [SMI] portion of the work, and the majority of the KPMG funding was taken by KPMG . . . ."); ¶ 60 (comparing average cost of KPMG personnel versus SMI personnel).  Importantly, the Complaint admits that the Plaintiff raised the concerns to DLA and, instead of investigating or reprimanding KPMG, DLA terminated SMI.  *Id.* at ¶¶ 53–58.  These allegations sound at best like a contractual dispute between KPMG and SMI under the teaming arrangement— they certainly do not state a claim for fraud against the Agency.  *See Wilson*, 525 F.2d at 380 ("To the degree Relators allege specific facts relating to contractual nonperformance in their complaint, they are more appropriately viewed as a basis for a breach of contract action," not fraud).

The few assertions that come closer to sounding in fraud drift unmoored to the most fundamental particulars required by Rule 9(b).  For example, the Complaint states that a KPMG employee directed another "to not fill positions that were included in KPMG's bids," and to use SMI task orders to conduct the work.  Compl. ¶¶ 36–37.  But this allegation offers no particular date, does not identify a particular bid, and fails to describe the content of any claim, let alone how the claim itself is false.  Despite the Plaintiff's "experience as a Department of Defense Comptroller," his general assertion that "the number of KPMG employees present on the worksites did not justify the amount of funding received by KPMG," *id.* at ¶ 46, does not approach the stringent standard for fraud complaints.  And the general allegation that "KPMG routinely submitted extremely high estimates of work . . . knowing that a much lower work effort was needed

to accomplish the work," and "essentially lied on their proposal by falsely claiming the cost of the work, fraudulently bidding high knowing the work would cost much less," *id.* at ¶ 61, also lacks the necessary particulars to demonstrate falsity.  The Complaint does not allege who submitted these estimates, to whom they were submitted, when they were submitted, and how in particular the estimates were objectively false.  This Complaint exemplifies the reasons for the heightened pleading standard under Rule 9(b): to prevent a plaintiff from attempting to harm a defendant's reputation with naked allegations of fraud, hoping to find evidence to support his claims (or exact a price) through costly discovery; and more fundamentally, to ensure that a Complaint provides sufficient specifics to enable a party to defend itself.  *Harrison*, 176 F.3d at 784.  Because the Complaint does not allege that any claims were false plausibly and with particularity, it should be dismissed.

### C.  The Complaint fails to sufficiently plead materiality.

The Complaint also fails to allege facts to satisfy the materiality requirement.  To establish liability under the Act, the defendant must establish that the falsity was material to the government's payment decision.  *See Escobar*, 136 S. Ct. at 1999–2000; *see also Harrison*, 352 F. 3d at 913 (requiring that "the statement or conduct [be] material").  A misrepresentation is material only if it affects the "likely or actual behavior of the recipient," *Escobar*, 136 S. Ct. at 2002 (quoting 26 R. Lord, Williston on Contracts § 69:12 (4th ed. 2003)), *i.e.*, "the government's decision to pay [the] defendant," *United States ex rel. Bachert v. Triple Canopy, Inc.*, 321 F. Supp. 3d 613, 619 (E.D. Va. 2018).  Where "the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material."  *Escobar*, 136 S. Ct. at 2003.  The Supreme Court has described this requirement as a "demanding" and "rigorous" one, which a plaintiff must satisfy to defeat a

motion to dismiss under Rules 8 and 9(b).  *Id.* at 2003, 2004 n.6 (plaintiffs must plead facts to support allegations of materiality plausibly and with particularity under Rules 8 and 9(b)).

The Plaintiff's failure to sufficiently allege materiality is glaring.  As an initial matter, the Plaintiff makes no allegations setting forth the terms of any contracts or bids.  Because he alleges no terms, he does not (and cannot) allege that any representation about a term—such as the number or allocation of staff—likely or actually affected the government's payment decisions.  That is, Plaintiff nowhere alleges with particularity (or even plausibly) *how* the actions at issue would or did change the Agency's payment decision under any contracts with KPMG.  Most notably, the Plaintiff never describes the nature of any contracts with the Agency.  The Plaintiff mentions a Blanket Purchase Agreement ("BPA"), Compl. ¶ 11, but does not describe its terms.  In any event, such an agreement alone is not a contract; the government must issue an order under the BPA.  *See* 13 C.F.R. § 121.404(a)(2) (noting that a BPA "is not a contract").  Notably, the terms of such orders may provide for a firm-fixed price.  "A firm-fixed-price contract provides for a price that is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract.  This contract type places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss."  48 C.F.R. § 16.202-1.  If the orders were on a firm-fixed price basis, for example, the number of KPMG personnel working on a particular project would not affect the Agency's payment decision.  *See Escobar*, 136 S. Ct at 2002.

Rather than alleging that the Agency's payment decisions were affected, the Complaint alleges the opposite: that the Agency was well aware of these allegations but continued to do business with KPMG.  *See* Compl. ¶ 52–59, 67.  The Plaintiff brought his "allegations of understaffing" to the attention of the Agency, reported "more detail" about his allegations in "weekly staffing reports" to the Agency, and specifically complained about "KPMG delays and

rejections of these qualified personnel." *Id*. ¶¶ 52–54. He went so far as to identify by name the supposedly "qualified personnel" for the contracting officer. *Id*. The Plaintiff elaborated further on the staffing issues, contending that KPMG had staffed "less than 40% of the positions" on some unspecified task order. *Id*. ¶ 58. But the Agency took no action against KPMG; far from it, the Agency terminated SMI and removed its personnel from the worksite. *Id*. ¶ 67.

This response to the Plaintiff's allegations is very strong evidence that his complaint was not material to the Agency's payment decision. As the Supreme Court explained, if an agency merely "pays a particular claim in full despite its actual knowledge" of the alleged violations, that is "very strong evidence" that violations were not material. *Escobar*, 136 S. Ct. at 2003. The evidence is even stronger here, where the Plaintiff made the same allegations directly to the Agency, which did not change its position. Where a government agency has "actual knowledge" of purported concerns yet "signaled no change in position," there is "strong evidence" that these concerns were "not material." *Id*. at 2003–04. And the Agency's rejection of these claims has been underscored by the government's later decision not to join this suit. *See Wilson*, 525 F.3d at 380 ("It also bears repeating that the United States, the actual party to the contract with KBR, has not brought a breach of contract action expressing dissatisfaction with KBR's performance."). The Plaintiff has not only failed to plead materiality for the overwhelming majority of his claims, but he has also pleaded himself out of materiality. The Court should dismiss the Complaint for failing to allege materiality plausibly and with particularity.

### D.  The Complaint fails to plead facts supporting scienter.

The Complaint is also deficient because the Plaintiff fails to plausibly allege facts showing that KPMG submitted a false claim "knowingly," 31 U.S.C. § 3729(a)(1) (A–B), which the Act defines as having "actual knowledge" of the falsity of information, or acting "in deliberate ignorance" or "reckless disregard" of its truth or falsity, *id.* § (b)(1)(A)(i–iii). The Supreme Court

has explained that this scienter requirement is "rigorous."  *Escobar*, 136 S. Ct. at 2002.  And it must be satisfied on the pleadings.  While intent may be averred generally under Rule 9(b), "an FCA plaintiff still must set forth specific facts that support an inference of fraud."  *Wilson*, 525 F.3d at 379 (internal quotation marks omitted).  Absent such factual allegations, district courts have dismissed FCA complaints for failure to plead scienter.  *See United States ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 583 (E.D. Va. 2010).  And the Fourth Circuit has affirmed dismissals when the pleadings contained only "general and conclusory allegation[s]" that a defendant "'knowingly' submitted false claims."  *United States ex rel. Complin v. N.C. Baptist Hosp.*, 818 F. App'x 179, 183 (4th Cir. 2020) (per curiam) (unpublished); *see also United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 703 (4th Cir. 2014) (similar).

Here, the scant scienter allegations are conclusory.  *See* Compl. ¶ 12 ("KPMG falsely represented . . . the number of employees it employs on its task orders and contracts."); ¶ 61 (KPMG submitted high estimates "knowing that a much lower work effort was needed."), ¶ 71 ("KPMG knowingly presented . . . ."), ¶ 72 ("KPMG knowingly made . . . .").  Such allegations, which gratuitously add the words "falsely" or "knowing"—but which do not plead facts showing how or why such statements were knowingly false—are insufficient.  *See DeCesare*, 757 F. Supp. 2d at 583 (dismissing claim against MedStar because, despite conclusory allegation that it "'knowingly' made false statements," there were no "*facts* showing MedStar's *knowledge* that its certifications falsely reported the absence of kickbacks").  As in *Iqbal*, these are "bare assertions," amounting "to nothing more than a 'formulaic recitation of the elements' of a [] claim" under the Act.  *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).

Additionally, the Plaintiff's scienter allegations are implausible because they are subject to "obvious alternative explanations."  *See Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at

567); *see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011) (applying standard to suits under False Claims Act). For instance, the Plaintiff alleges that KPMG "intentionally add[ed] surge hours and support to their task order proposals . . . with no intent to employ personnel to fill the hours." Compl. ¶ 25. Yet there is an obvious alternative explanation: the proposals simply contained terms for a "surge option" for which the government would be billed only if it decided to use that option. *See* 48 C.F.R. § 252.217-7001 ("Surge Option"), (a)(1) (allowing government to "[i]ncrease the quantity of supplies or services called for under [a] contract"). Similarly, the Plaintiff claims that KPMG did not "fill vacant positions that had been proposed to the government as necessary . . . in order to maximize KPMG revenue and profit." Compl. ¶ 26. But the alternative explanation is that not all positions turned out to be necessary to complete the work and KPMG was not required to staff every position it had proposed. Indeed, the Plaintiff does not allege any such requirement. The Court should dismiss the Complaint for failure to allege scienter.

## II.   THE STATUTE OF REPOSE BARS RECOVERY ON ANY CLAIMS BEFORE MAY 3, 2009.

Although for the foregoing reasons, the Complaint should be dismissed in its entirety, there is yet another reason to dismiss a portion of it: it is barred by the Act's statute of repose. Under the Act, a suit may not be brought if barred by one of two limitations periods. *See, e.g.*, *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019); *United States ex rel. Frascella v. Oracle Corp.*, 751 F. Supp. 2d 842, 848 (E.D. Va. 2010) (summarizing Act's statute of limitations). Under the first limitation period, an action may not be brought "more than 6 years after the date on which the violation" is committed. 31 U.S.C. § 3731(b)(1). Under the second, the action must be "brought within 3 years after the United States official charged with the responsibility to act knew or should have known the relevant facts, but not more than 10 years

after the violation." *Hunt*, 139 S. Ct. at 1510; *see also* 31 U.S.C. § 3731(b)(2).   Courts have analogized the ten-year limitation to a statute of repose.   *E.g.*, *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996), *abrogated on other grounds by Hunt*, 139 S. Ct. 1507 (2019); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 474 F. Supp. 2d 75, 83–84 (D.D.C. 2007).   At bottom then, under no circumstances may a plaintiff file suit more than ten years after an alleged false claim.   KPMG raises here the ten-year statute of repose, which bars action for any unspecified claims submitted more than ten years before the suit was filed (and reserves the right to address the statute of limitations period later if necessary).

The Plaintiff filed this suit on May 3, 2019.   The Act's statute of repose therefore bars action for a claim that accrued before May 3, 2009.   Yet the Plaintiff makes a series of allegations about activity in 2006.   *See* Compl. ¶¶ 23–27 (referring to events in 2006, or "in or about" 2006). Those claims—which purportedly accrued more than ten years ago—are plainly barred.   *See* 31 U.S.C. § 3731(b)(2).   The portion of the Complaint as to claims submitted before May 3, 2009, including any in or about 2006, should be dismissed with prejudice.

19

## <u>CONCLUSION</u>

KPMG respectfully submits that the Court should dismiss this action; the portion of the

Complaint relating to unspecified claims submitted before May 3, 2009 should be dismissed with

prejudice.

Respectfully submitted,

/s/ Edmund P. Power<br>
Edmund P. Power VSB #65841<br>
Michael R. Pauzé (<i>pro hac vice</i>)<br>
Kenneth Y. Turnbull (<i>pro hac vice</i>)<br>
David P. Mattern (<i>pro hac vice</i>)<br>
<b>KING & SPALDING LLP</b><br>
1700 Pennsylvania Ave., NW<br>
Washington, D.C. 20006<br>
Tel: (202) 737-0500<br>
Fax: (202) 626-3737<br>
epower@kslaw.com<br>
mpauze@kslaw.com<br>
kturnbull@kslaw.com<br>
dmattern@kslaw.com<br>
<br>
<i>Counsel for Defendant KPMG LLP</i>

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send the document and a notification of such filing (NEF) to the following:

Bryan Kendall Short
Paul Nesbitt Murphy
EFFECTUS PLLC
1101 Connecticut Ave. NW
Suite 450
Washington, DC 20036

*Counsel for Plaintiff Robert Stillwell*

Kristin Starr
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
2100 Jamieson Ave.
Alexandria, VA 22314

*Counsel for the United States*

/s/ Edmund P. Power
Edmund P. Power (VSB #65841)
Counsel for Defendant KPMG LLP
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
202-626-5448 (P)
202-626-3737 (F)
epower@kslaw.com