**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| *ex rel.* **ROBERT STILLWELL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00545-LMB-TCB |
| | ) | |
| **KPMG LLP**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF-RELATOR ROBERT STILLWELL'S**
**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff-Relator Robert Stillwell, pursuant to Local Rule 7 of the Eastern District of

Virginia, and for reasons stated in the accompanying memorandum of law, respectfully requests

that this Court deny Defendant KPMG LLP's Motion to Dismiss.

　　　　　　　　　　　　　　　　　　_/s/ Bryan Short_
　　　　　　　　　　　　　　　　　　Bryan Short (VSB 68655)
　　　　　　　　　　　　　　　　　　Effectus PLLC
　　　　　　　　　　　　　　　　　　1101 Connecticut Avenue, NW, Suite 450
　　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　　Tel: (202) 888-2107
　　　　　　　　　　　　　　　　　　Fax: 202-509-0262
　　　　　　　　　　　　　　　　　　BryanShort@effectus.legal

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................4

LEGAL STANDARD ............................................................................................................4

ARGUMENT..........................................................................................................................5

   I.   RELATOR'S COMPLAINT SATISFIES THE REQUIREMENTS UNDER RULES 8 AND 9(b)5

     A.   The Complaint sufficiently pleads claims for payment. ...............................................6

     B.   The Complaint sufficiently pleads False Claims. .......................................................12

     C.   The Complaint sufficiently pleads materiality...........................................................15

     D.   The Complaint sufficiently pleads scienter. ...............................................................19

   II.   ALLEGATIONS WHICH OCCUR BEFORE MAY 3, 2009 PROVIDE CONTEXT TO THE

   ORIGINATION OF THE FRAUDULENT SCHEME .......................................................21

CONCLUSION......................................................................................................................22

CERTIFICATE OF SERVICE .............................................................................................24

## CASES

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)............................................................................3, 10, 19, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................3, 19

*Cappetta v. GC Servs. Ltd. P'ship*,
   654 F.Supp.2d 453 (E.D. Va. 2009) ........................................................................4

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) ...............................................................................4, 14

*U.S. v. Bornstein*,
   U.S. 303 (1976) ................................................................................21

*U.S. v. McNinch*,
   356 U.S. 595 (1958) .........................................................................21

*United Sates ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
   707 F.3d 451 (4th Cir. 2013) .........................................................5, 6, 9

*Universal Health Servs, Inc. v. United States ex rel. Escobar*,
   136 U.S. 1989 (2016) .................................................................14, 15

*Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) .............................................................5

## STATUTES

31 U.S.C. § 3729 ...........................................................................7, 17, 19

Fed. R. Civ. P. 9(b) ........................................................................*passim*

## INTRODUCTION

COMES NOW Plaintiff-Relator Robert Stillwell ("Plaintiff" or "Relator"), by and through the undersigned counsel, and respectfully moves this honorable Court to deny Defendant KPMG LLP's ("KPMG" or "Defendant") Motion to Dismiss. KPMG claims that Relator has failed to support the allegation of a False Claims Act violation.

Relator's Complaint (the "Complaint") not only meets but exceeds the standards governing violations of the False Claims Act, and the Complaint sufficiently alleges damages and a claim upon which relief can be granted. KPMG contends that Relator has not pled and has not alleged sufficient facts for a cause of action. To support its arguments, KPMG misstates the law and omits allegations from the Complaint. Accordingly, KPMG's Motion to Dismiss is without merit and should be denied.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) must be denied unless the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Thus, applying the plausibility standard outlined in *Twombly*, the court must determine whether the factual allegations contained within the Plaintiff's complaint "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A claim is plausible when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1951 (noting further that the plaintiff need only "nudge" the claims "across the line from the conceivable to the plausible").

In considering a motion to dismiss, the court is required to accept as true all well-pled allegations in the complaint and must construe the complaint in the light most favorable to the plaintiff. *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). If the complaint alleges -- directly or indirectly -- each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim. *Twombly*, 550 U.S. at 563 n.8; *Cappetta v. GC Servs. Ltd. P'ship*, 654 F.Supp.2d 453, 457 (E.D. Va. 2009).

## ARGUMENT

## I. RELATOR'S COMPLAINT SATISFIES THE REQUIREMENTS UNDER RULES 8 AND 9(b)

While Relator agrees with KPMG that the claims made in the Complaint must comply with Rule 9(b)'s "stringent pleading standard," Relator disagrees with KPMG's legal theory that this all but requires a Relator to have executive level access to the internal workings of a company in order to satisfy that standard. The purpose for the heightened standard is in part to ensure that Defendants have sufficient information to formulate a defense, *not* so that Defendants might avoid any and all litigation by pointing to any given complaint's lack of some obscure information and claiming that complaint as being incomplete. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) ("First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of.... Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.")

The court in *Harrison* provides two elements through which the Court should analyze the Rule 9(b) standard: 1) whether the "defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial;" and 2) whether the "plaintiff

has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. Even a cursory review of Relator's Complaint answers both of the above questions with a clear and resounding **YES**.

To survive a Motion to Dismiss for failure to state a claim, a Plaintiff must "at a minimum, describe the time, place, and contents of the false representations as well as the identity of the person making the misrepresentation and what he obtained hereby." *United Sates ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (citing *Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). Essentially a plaintiff must allege such facts as may permit the defendant to understand the nature, amount, and scope of the allegations and prepare its defense accordingly. Absent from the foregoing requirements is any strict mechanical requirement that a plaintiff recite all specific task order numbers or individual invoice numbers which form the basis of its complaint.

Relator detailed the false statements at issue, including where, when, and how KPMG submitted the false statements. Relator provided specific KPMG individuals who were in part responsible for the false statements. Compl. ¶¶ 23-26, 42, 56. Relator detailed the contract and the time span on which the false claims were submitted for payment. Compl. ¶¶ 56, 64. Relator provided specific individuals as examples of persons that KPMG listed as full-time equivalents on multiple simultaneous contracts. Compl. ¶¶ 65-66. The Complaint clearly satisfied the requirements of the aforementioned rules.

### A. The Complaint sufficiently pleads claims for payment.

In spite of the numerous specific examples set forth with particularity including the time, place, maker, and content for false claims within the Complaint, KPMG argues that the Complaint "does not set forth the particulars regarding the time, place, maker and content of any

false claim for payment to the Government." Motion to Dismiss at 8. To support this claim, Defendant cherry-picks certain quotes from the Complaint and conveniently ignores the rest of the Complaint in its entirety. What KPMG attempts to brush aside as "scattershot allegations of mismanagement over 68 paragraphs" can be more specifically described as "specific instances of false claims meticulously alleged over 68 paragraphs." Motion to Dismiss at 9.

In particular, Relator alleges that ALL task orders issued to KPMG pursuant to the Defense Logistics Agency ("DLA") Audit Readiness Blanket Purchase Agreement ("BPA") were false claims as that term is defined pursuant to 31 U.S.C. § 3729. Compl. at ¶ 11-15. Defendant would have this court believe that because Plaintiff alleges a large scale and ongoing fraud against the United States Government, Plaintiff's case is somehow impermissibly broad. Such an upside-down view of the False Claims Act would penalize only small-scale frauds and create an immunity shield for parties who were bold enough to concoct an enormous fraud against the U.S. Government. Such a reading of the law would be contrary to the spirit of the law. Furthermore, Neither Rule 8 nor Rule 9(b) require that Plaintiff know and include in its complaint a neat listing of all task orders or other claims upon which its allegations lie. In fact, in *Nathan*, the court held that "[b]ased upon the nature of the schemes alleged in many of those cases, specific allegations of defendant's fraudulent conduct necessarily led to the plausible inference that false claims were presented to the Government." 707 F.3d at 457. The Complaint is replete with time, place and contents of the false representations and the identities of the persons making them.

The Complaint lays out the overarching theory of the false claims that KPMG has submitted to the Government in paragraph 12[1], and thereafter in each of the ensuing twenty paragraphs alleges dates upon which false claims have been generated by KPMG and submitted to the Government for payment and were, in fact, paid.[2] In paragraph 15 the Complaint specifically describes the arrangement between KPMG and St. Michael's Inc. ("SMI"), the company which employed Relator and had a Contract Teaming Agreement ("CTA") with KPMG at the time, establishing that KMPG's as CTA Lead and "in total control of the relationship with the Government and everything to do with task orders issued…" Compl. ¶ 15. Paragraphs 23 through 26 name a specific person, the Managing Director of KMPG who oversaw the KPMG Contract Management Team, and specifically allege that he "instructed KPMG [Contract Management Team] staff to intentionally add surge hours and support . . . with the objective of recovering the revenue but with no intent to employ personnel to fill the hours" and to "not hire

_____

[1] Compl. ¶ 12 ("This action alleges that KPMG falsely represented to the United States Government the number of employees it employs on its task orders and contracts, and the number of employees it proposed for task orders it had no intention of actually hiring. Knowing that its employees were actually working on other Government contracts, KPMG double billed these employees under the DLA BPA contract vehicle, falsely listing these employees in reports and invoices to the Government for work on the DLA BPA task orders.")

[2] *See* Compl. ¶ 24-25 ("In 2006, Terry Carnahan was a Managing Director of KPMG and oversaw the KMPG Contract Management Team ("CMT"), managed by Tina Butler. Terry Carnahan instructed KPMG CMT staff to intentionally add surge hours and support to their task order proposals with the objective of recovering the revenue but with no intent to employ personnel to fill the hours.").

full time equivalents ("FTE's") to fill vacant positions that had been proposed to the Government as necessary to perform the work in order to maximize KPMG revenue and profit." Compl. ¶ 25-26. The foregoing are *specific* allegations naming the time, place, maker, and content of false claims to the Government for payment. The foregoing is *also* conspicuously absent from KPMG's Motion to Dismiss as to include those paragraphs and others[3] in the Complaint would mean the complete dissipation of KPMG's arguments. Instead, KPMG attempts to distract this Court by sweeping nearly the entirety of the Complaint under a rug of "scattershot allegations." Motion to Dismiss at 9. Paragraph 42 of the Complaint specifically states that a KPMG Director, Anthony Millhouse, considered one KPMG Partner, Patricia St. George, to be "not so bad" regarding the fraudulent practices alleged in the Complaint, whereas the partner who took over after her, Elizabeth Haquard, was "going crazy" with the fraudulent behavior. Compl. ¶ 42.

The Defendant would have this Court believe that it must include in its Complaint the time, date, contents, and participant of each and every particular false claim that it believes occurred during the time period Plaintiff alleges that false claims were submitted to the U.S. Government by KPMG, but no such requirement can be found in the case law. The requirement that a Plaintiff attach an exhibit listing all task orders issued by the Government and awarded to KPMG under the DLA BPA would not provide any additional information to Defendant in this

---

[3] *See generally* Compl. ¶ 35-37 ("Tina Butler was CMT Manager when [SMI] executed its CTA with KPMG. Tina Butler had been directly instructed by Terry Carnahan not to fill positions that were included in KPMG's Bid. Tina Butler was instructed to use [SMI] task order to conduct the work, while not filling positions on the KPMG task orders . . . for the purpose of increasing revenue and profit from the KPMG task orders by ensuring work was done without KPMG needing to hire employees.").

action. The Court has never sought to impose such a mechanical requirement in a pleading; rather the court has sought always to require sufficient facts to permit a reasonable defendant to understand the nature and scope of the allegations made by the plaintiff and to prevent facially deficient claims from proceeding. Moreover, the Defendant, in its argument in Section I. C. of its Motion to Dismiss, attempts to include and argue extraneous facts (not alleged in the Complaint) related to the particular terms of the DLA BPA thereby acknowledging itself that it understands the particulars of the agreements and claims pursuant to which the Relator has brought this case. *See,* Motion to Dismiss at 16. In essence, Defendant has pleaded itself out of particularity as it has notice as to the particular false claims that the Relator is alleging as Defendant is attempting to include facts not plead in the Complaint.

No less than twelve paragraphs of the Complaint make allegations related to a particular person undertaking particular acts on behalf of KPMG which amounted to a false claim on the U.S. Defendant heavily relies upon *Nathan* to great effect in its Motion; however, the present case and the Complaint are vastly dissimilar when compared with *Nathan*. In *Nathan*, the relator alleged that false claims had been submitted to the Government for payment because of the assumption that certain types of prescriptions are generally prescribed to people in Medicare or Medicaid and, therefore, by inference false claims must have been submitted by some unknown party to the U.S. Government. The connection between the conduct alleged and the false claims alleged to have been submitted in *Nathan* were simply assumed. Here, the Relator has relied on no such assumptions in its Complaint. Rather, the Relator alleges in its complaint that all proposals and invoices prepared and submitted by KPMG under the DLA BPA by KPMG were fraudulent, and has provided specific dates, persons, and factual pleadings in support thereof.

In *Nathan*, the relator needed to assume that claims had been submitted to Medicare, had to assume that the defendant knew such claims were presented for payment, had to assume that the claims were paid and had to assume that they were false. *Nathan* 707 F.3d at 458-61. Essentially, the relator in *Nathan* was required to make assumptions in each factual predicate of his claims. Relator makes no such assumptions here. The DLA BPA by its very nature requires that an awardee, in this instance KPMG, submit claims for payment upon task orders it is awarded pursuant to the program. Pursuant to the Court's guidance in *Iqbal*, a court is permitted to draw reasonable inferences that a defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Relator alleges that *all* task orders submitted by KPMG under the DLA BPA were false claims and, further, Relator describes in detail what lead the Relator to understand these claims to be fraudulent and therefore false claims. The Court is permitted pursuant to *Iqbal* to assume that if a task order has been issued by the U.S. Government to KPMG under the DLA BPA during the period alleged in the Complaint that the Relator has alleged that it is a false claim. Furthermore, such an allegation permits KPMG to mount its defense as it is specific in time, connected to a particular contract vehicle (the DLA BPA) and the Complaint includes additional gloss to explain the import and relevance of the alleged conduct of KPMG's managers. In addition, in order to be awarded task orders, a party must submit bids to the contracting officer for evaluation and award. Submission of fraudulently produced bid proposals, and after award submitting fraudulent invoices, and receiving payment thereon is the very essence of a false claim.

Relator need not rely on numerous assumptions of downstream conduct to infer a false claim was submitted to the U.S. Government as the relator in *Nathan* did. Relator alleges

specifically that KPMG submitted false statements to the U.S. Government in its bid proposals, task orders and false claims for payment to the U.S. Government in connection with all its work it alleged to have performed on the DLA BPA. Relator need not rely upon some assumed third party who must have submitted a claim to a Government agency somewhere in the causal chain. The Complaint alleges that KPMG submitted fraudulent bids in specific years and was later awarded task orders based upon those bids for which it submitted claims for payment that were subsequently paid. The Complaint alleges persons who caused or directed KPMG to submit false claims to the U.S. Government. Frankly, for KPMG to claim that Relator has failed to state a claim can only be based upon a cherry-picked reading of the Complaint wholly divorced from the entire narrative context that the Complaint provides as if the Complaint were a buffet that Defendant could pick and choose individual pieces while ignoring the rest. When read in its narrative whole, the Complaint more than adequately and robustly alleges false claims were submitted to the U.S. Government. It alleges who submitted them. It alleges when they were submitted. It alleges how they were false.

**B.  The Complaint sufficiently pleads False Claims.**

Relator sufficiently pleads that claims were false on numerous, specific paragraphs of the Complaint. Once again, KPMG's argument that Relator failed to sufficiently plead false claims is based upon a cherry-picked reading of the Complaint and purposeful mischaracterizations of the allegations therein.

Conspicuously absent from KPMG's Motion to Dismiss are paragraphs 65 and 66 of the Complaint wherein Relator alleges that KPMG falsely submits two specifically named KPMG employees, Patty St. George and Jim Hauer III, as full-time equivalent employees across multiple Government contracts. *See* Compl. ¶¶ 65-66. Relator alleges that Patty St. George, a

KPMG employee, has been billed by KPMG to the Government as working on both DLA BPA work and, simultaneously, on a separate KPMG Navy Contract. Compl. ¶ 65. Relator further alleges that another KPMG employee, Jim Hauer III, was listed by KPMG as working under a SMI task order as a full-time equivalent, yet is also being billed by KPMG as a full-time equivalent across several projects in the Department of Defense and other government contracts. Compl. ¶ 66. These are two specific instances wherein the Complaint alleges that KPMG submitted false statements to the Government and made false claims for which it was paid by the Government.

The Complaint specifically alleges that Relator, who has experience as a Department of Defense Comptroller, obtained a monthly list of KPMG staff subcontracted to SMI's Task Order 61 and discovered that staff KPMG had assigned to the task order "were not present and had not been present for more than 8 months." Compl. ¶ 49. KPMG argues that Relators "allegations are conclusory and lack particulars" and that the aspects of the Complaint are "untethered to any particular time, place, or maker" is completed refuted by paragraphs 45 through 49 of the Complaint, wherein Relator provides a specific time, "March 2019," a specific task order, "Task Order 61," and a specific false statement, that KPMG was billing the Government for employees that were not actually performing any work on the task order. Compl. ¶¶ 45-49.

KPMG facetiously states "The naked assertion that KPMG 'double billed' for employees working on other government contracts, 'falsely listing these employees in reports and invoices to the government,' . . . begs the key questions under rule 9(b): Which reports? Which invoices? When were they submitted? And what in particular did they say that was objectively false?"

In order: 1) Staffing Reports, specifically a monthly list of KPMG staff obtained in 2019, among others, obtained by Relator, previously a Department of Defense Comptroller, who

determined based on that staffing list that full-time employees KPMG claimed to have assigned were not actually present performing on task orders. Compl. ¶¶ 45-49. 2) All invoices prepared by KPMG under the DLA BPA. Compl. ¶¶ 12, 23-29, 36, 42-51, 62-64. 3) During the term of the BPA DLA. 4) That KPMG was claiming to the Government that full-time employees were performing on contracts that said employees were not performing on. Compl. ¶¶ 47-49, 64-65.

The above answers to KPMG's facetious questions are clear from even a cursory reading of the complaint, and the paragraphs cited in those answers are only some examples of clear, specific answers the Complaint provides. What KPMG fails to understand is that even though they did not include the particulars provided by the Complaint in their carefully copy/pasted cherry-picked quotes, such particulars are still found within the Complaint. The reason why KPMG did not include that the Complaint specifically mentions "Task Order 61" is that KPMG wants free reign to make claims such as the Complaint "does not identify . . . task orders." Motion to Dismiss at 12; *but see* Compl. 47. The reason why KPMG did not include that the Complaint specifically mentions that Relator found that KPMG employees assigned to Task Order 61 had not been present "for more than 8 months" is because KPMG wants to be able to argue that the Complaint "does not say" what "was objectively false." Motion to Dismiss at 12; *but see* Compl. 49. KPMG attempts to paint the fact that Relator specifically alleges that KPMG assigned and billed employees to the Government who did not perform on their assigned task order as nothing more than "staffing complaint." Motion to Dismiss at 13. The lengths that KPMG goes through to attempt to distract this Court from the obvious and particular false claims alleged in the Complaint is disingenuous to the point of being dishonest.

Finally, KPMG argues that the Complaint fails to allege "who submitted these estimates, to whom they were submitted, when they were submitted, and how in particular the estimates

were objectively false." Motion to Dismiss at 14. This argument is both cynical and nonsensical. KPMG would have this Court believe that the Complaint is not particular enough because the Complaint does not specifically mention the KPMG employees who prepared every proposal for every invoice throughout the entire DLA BPA term. There is no requirement that Plaintiff submit every single invoice number and task order (negating the purpose for any discovery in any false claim action ever) in order to survive a Motion to Dismiss, and *Harrison* is clear that a "court should hesitate to dismiss a complaint under Rule 9(b)" so long as "the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and 2) the plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. The Complaint not only alleges KPMG as an entity submitted invoices for payment, names multiple KPMG supervisors responsible for the fraud on behalf of KPMG, but also has alleged and provided more than enough facts for KPMG to be aware of the particular circumstances of the matter, and the Complaint has provided more than enough evidence and specific facts to satisfy the requirement for prediscovery evidence.

**C. The Complaint sufficiently pleads materiality.**

It is impossible to respond in opposition to KPMG's materiality argument without first undoing KPMG's flawed and skewed interpretation of *Escobar*, upon which KPMG bases effectively the entirety of its argument. In *Escobar*, the Supreme Court's ruling focused on what is known as the "implied false certification theory of liability," wherein "a payment request" is treated "as a claimant's implied certification of compliance with relevant statutes, regulations, or contract requirements…" *Universal Health Services, Inc. v. United States ex rel. Julio Escobar and Carmen Correa*, 136 U.S. 1989, 1993 (2016). The false claim in *Escobar* revolved around the idea that by not disclosing information that could be material, "the defendant has made a

15

misrepresentation that renders the claim 'false or fraudulent.'" *Id*. The difference between *Escobar* and the case at bar is Relator is alleging with particularity that KPMG submitted false claims as to the number of full-time employees KPMG informed the Government it employed for contracts for the purpose of defrauding the Government out of substantial amounts of money—not that KPMG passively withheld information that might be considered fraudulent. KPMG lied *directly* to the Government both on invoices submitted and on task order proposals. Compl. ¶ 47.

Having established the difference between *Escobar* and the present case, wherein the defendant in *Escobar* was accused of "implied false certification theory of liability" and KPMG is accused of directly submitting false claims to the Government via contract proposals and invoices, the remainder of KPMG's arguments simply do not stand on solid foundation. KPMG goes to great lengths to emphasize that the Complaint does not detail the specific terms of the BPA which KPMG broke; however, no terms of any contract ever written by the Government would permit a contractor to knowingly submit full time employees that such a contractor had no intention of employing for that contract, nor would any contract ever written by the Government permit a contractor to submit the same employee as a full-time equivalent for multiple simultaneously occurring task orders. No contract issued by the Government would ever allow a contractor to report to the Government a list of employees that were working on a task order when those employees were not working on that task order. In fact, in *Escobar*, the Supreme Court held that "a defendant can have 'actual knowledge' that a condition is material without the Government expressly calling it a condition of payment." 136 S. Ct. at 2001. Furthermore, the Supreme Court in *Escobar* has held that a court need not be intentionally daft, noting "because a reasonable person would realize the imperative of a functioning firearm, a defendant's failure to

appreciate the materiality of that condition would amount to 'deliberate ignorance' or 'reckless disregard' of the 'truth or falsity of the information' even if the Government did not spell this out." *Id.* at 2001-02. By the Supreme Court's guidance in *Escobar*, in light of the inclusion in the task orders and submissions to the Government as to the number of employees both necessary for the task and actually employed by KPMG for the task, we need not specifically demonstrate a term or condition of any particular task order or contract as the materiality of the number of employees used for the work as it is necessarily implied. Defendant's contention that the number of employees must be expressly stated somewhere as an express condition of payment uses a logic that was expressly rejected by the Supreme Court in *Escobar. Id.* at 2002.

KPMG's argument that Relator "[cannot] allege that any representation about a term . . . affected the Government's payment decisions" is absurd and demonstrates a profound misunderstanding of Government procurement. Motion to Dismiss at 15. By nature, *every* contract proposal, task order proposal, and invoice submission "actually affect[] the Government's payment decisions." *Id*. By submitting false records of employees as part of its bid proposals and invoices connected to the DLA BPA and task orders, KPMG without question "knowingly [made]" and "used . . . a false record" for the purpose of receiving payment. 31 U.S.C. § 3729(1)(B). Both the Government *and* KPMG treated the staffing as material while performing on the contract, and it is beyond parody that KPMG now alleges staffing to be immaterial in defense of its fraudulent scheme. According to KPMG's understanding of procurement law, proposals are effectively irrelevant as the Government would pay regardless of what proposals contained. Clearly this is not the case, as without the proposals and invoices both containing false claims regarding the staffing of those contracts submitted to the Government by KPMG, the Government would not pay KPMG any money for performance.

i.    *KPMG Treated the Number of Employees Proposed as Material*

In its Motion, KPMG states that "If the orders were on a firm-fixed price basis, for example, the number of KPMG personnel working on a particular project would not affect the Agency's payment decision." Motion to Dismiss at 15. Paradoxically, if the number of KPMG personnel working on a particular project would not affect the Agency's payment decision, why would KPMG have submitted personnel it never intended to employ on that contract in the first place? The answer is clear: to KPMG, submitting employees to multiple simultaneous contracts was material towards the goal of increasing the overall cost of the contracts for the purpose of defrauding the Government.

The Complaint specifically alleges that KPMG was purposefully proposing a higher number of FTE's than it intended to staff. *See* Compl. ¶ 44-51. For KPMG to submit a certain number of staff positions in its task proposals that it never intended to fill, as well as double bill employees across multiple simultaneous task orders, and then to argue that KPMG did not consider the staffing to be material simply because of the type of contract at play is simple laughable. *See* Compl. ¶ 12.

ii.    *The United States Government Treated Staffing as Material*

Confusingly, KPMG attempts to paint the Government removing SMI from the BPA as an example of the Government not considering staffing of the BPA to be material to the contract. *See* Motion to Dismiss at 55. The Complaint alleges that KPMG purposefully understaffed contracts, and that when Relator brought this to the attention of the Agency, the Agency responded by issuing a cure notice to SMI regarding staffing issues. *Id*. at 6. If, as the Motion to Dismiss claims, "the number of . . . personnel working on a particular project would not affect the Agency's payment decision" was true, then why would the Agency send out a cure notice and subsequently remove SMI from the contract based on the grounds that SMI was failing to staff personnel working for the project? *Id*. at 15. By sending out a cure notice and removing SMI from the contract, specifically for failing to fully staff task orders, the Agency stated beyond

18

all doubt that the staffing of the contract was material to the contract in the eyes of the Government.

That the Government immediately disciplined and then removed SMI from the Contract upon Relator's raising of the staffing issues, demonstrates the Government's belief in the materiality of the staffing concerns. As stated in the complaint, Elizabeth Hacquard a KPMG senior partner with the DLA, stated that "Nobody does anything inside the DLA without [KPMG] knowing about it." Compl. ¶ 56. This is the same Elizabeth Hacquard noted earlier as having been described by a KPMG director as "going crazy" with the false claims staffing scheme. *See* Compl. ¶ 42.  Relator did not, in fact, "plead itself out of materiality," but instead plead with specificity that KPMG pressured the Government to remove SMI from the contract when Relator attempted to bring the discrepancy to light. *See* Compl. ¶¶ 51-55.

For the foregoing reasons, the Complaint properly sets forth the requirements for materiality. The Complaint clearly alleges that payment would not have been made to KPMG had KPMG not submitted false claims to the Government. "Under the FCA, a statement or course of conduct is material if it has a natural tendency to influence agency action or is capable of influencing agency action." *U.S. ex rel. Wilson v. Kellog Brown & Root, Inc.*, 525 F.3d 370, 378 (4th Cir. 2008). There is no plausible argument that KPMG's false statements in its proposals and invoices regarding staffing were not "material." The Complaint establishes that the Government made payments to KPMG during the term of the DLA BPA based on the false statements. Compl. ¶ 60.

### D.  The Complaint sufficiently pleads scienter.

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a

person may be averred generally." Fed. R. Civ. P. 9(b). 31 U.S.C. § 3729(a)(1)(A) defines

"knowingly" as "actual knowledge" or acting "in deliberate ignorance or reckless disregard" of

the truth or falsity of a claim. The Complaint does not rely on conclusory statements; rather, it

alleges particular persons with particular knowledge and with particular intent to deceive the

Government and to submit a claim that they knew to be false. *See* Compl. ¶25-27, 36-37.

Notwithstanding that under Rule 9(b) a plaintiff must only aver malice, intent, or knowledge

generally, the Complaint provides details related to which person at KPMG has the requisite

scienter to establish that KPMG knowingly submitted false claims to the U.S. Government for

payment.  Additionally, the Complaint alleges specific details which provide the reasonable basis

upon which the Relator may allege that KPMG, through its employees, knowingly submitted

false claims to the U.S. Government. Paragraphs 24-28 provide dates and persons whose averred

actions may be relied upon to demonstrate malice, intent, or knowledge. Rather than simply

allege that KPMG knew or had reason to know that the claims it submitted to the U.S.

Government were false, the Relator has alleged specific facts which demonstrate why his belief

is reasonable that Terry Carnahan and Tina Butler had the requisite actual knowledge or were

acting in deliberate ignorance or reckless disregard of the truth. *See*, Compl. ¶24-28. More than

aver generally, Relator has supported its allegations with the specific circumstances and acts of

KPMG employees which would lead a reasonable person to believe that these persons acted with

actual knowledge of the wrongfulness of their conduct.

In addition, the Defendant attempts to stretch *Twombly's* plausibility holding past its

breaking point. *Twombly* requires that a claim to relief must be plausible on its face. This does

not require that a plaintiff show that no alternative explanations are possible, rather "it simply

calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the

alleged wrongdoing]." *Twombly*, at 556. In determining whether a complaint states a plausible

claim is context-specific, requiring the reviewing court to draw on its experience and common

sense. *Iqbal* at 662, 663-64. In *Iqbal*, to infer a conspiracy to deprive the plaintiff of his

constitutional rights would have required assuming a grand, Government-wide conspiracy to

deprive Mr. Iqbal in particular of his constitutional rights and would have inferred scienter upon

a man, Attorney General Ashcroft, that Iqbal never met, never spoke with and never traded an

email with. This case requires no such grand, Government-wide conspiracies. In addition, the

Court in *Iqbal* held that a conclusory statement was insufficient to overcome a motion to dismiss

because it failed to reference its factual context. *Iqbal*, at 686. The Relator here has provided the

necessary and required factual context. The Complaint alleges facts that the Relator himself

knows, concerning people he has personally worked with and with whom he has personally

conversed, concerning actions taken by such persons. The Complaint does not ask this court to

assume that a grand conspiracy must exist somewhere which requires the participation of nearly

every DOJ and DOD employee (as the Iqbal case would have required). Rather, the Complaint

alleges that specific individuals at KPMG had specific knowledge of the truthfulness or

untruthfulness of claims for payment that KPMG submitted to the Government. We need not

assume some grand conspiracy here to demonstrate scienter. We need only rely upon the facts as

averred in the Complaint which allege specific intent of individual employees of the Defendant.

## II.   ALLEGATIONS WHICH OCCUR BEFORE MAY 3, 2009 PROVIDE CONTEXT TO THE ORIGINATION OF THE FRAUDULENT SCHEME

Relator in his Complaint has alleged conduct which spans many years. The allegations

contained in the Complaint are meant to lay out the entire factual predicate and context which

give rise to the reasonable belief that false claims have been submitted to the Government. Due

to the fact that this conduct commenced during a time which would be time-barred under the

law, does not invalidate the claims made in the Complaint for periods of time which are not time-barred (namely those claims which originated on May 3, 2009 and continued thereafter). For this reason, Defendant's Motion to Dismiss with respect to time-barred claims should be dismissed with respect to any claims alleged in the Complaint which occurred on May 3, 2009 and thereafter.

## **CONCLUSION**

A close reading of *Escobar* details that this case against KPMG is *exactly* the kind of case for which the False Claims Act was enacted. KPMG, one of the largest accounting firms in the world, defrauded the United States Government out of substantial amounts of money through a fraudulent staffing scheme by bidding unnecessarily high prices to perform contracts (via submitting bids with estimated number of employees it knew were unnecessary) and submitting false claims as the to the full-time employees assigned to those contracts in order to ensure the continuation of the high prices. According to the Supreme Court in *Escobar*, the False Claims Act "was originally aimed principally at stopping the massive frauds perpetrated by **large contractors** during the civil war." *Escobar*, 136 U.S. at 1996 (quoting *U.S. v. Bornstein*, U.S. 303, 309 (1976) (emphasis added)). Further, a "'series of sensational congressional investigations' prompted hearings where witnesses 'painted a sordid picture of how the United States had been billed for nonexistent or worthless goods, charged exorbitant prices for goods delivered, and generally robbed in purchasing the necessities of war." *Id*. (quoting *U.S. v. McNinch*, 356 U.S. 595, 599 (1958)). KPMG, like the "large contractors" mentioned in *Bornstein*, has been billing the Government for nonexistent employees, and charging exorbitant prices for the services rendered. *That* is the false claims that the Complaint resolutely establishes.

Based upon KPMG's theory of fraud, firm-fixed-price contracts are inherently immune from any essence of false claims by nature. This is not the case. KPMG, through false claims regarding the number of employees assigned to contracts and the surge hours for those contracts convinced the Government that the task required substantially more money to complete than it actually did. The only way KPMG could with a straight face allege that the Complaint lacked specifics is if they had not read it. For the forgoing reasons, Relator respectfully requests that this Court deny KPMG's Motion to Dismiss, or that Relator be permitted to amend their Complaint.

Dated: March 26, 2021                                    Respectfully submitted,


                                                   __/s/ Bryan Short_____
                                                   Bryan Short (VSB 68655)
                                                   Effectus PLLC
                                                   1101 Connecticut Avenue, NW, Suite 450
                                                   Washington, DC 20036
                                                   Tel: (202) 888-2107
                                                   Fax: 202-509-0262
                                                   BryanShort@effectus.legal

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of March, 2021, I will electronically file the

foregoing with  the Clerk of Court using the CM/ECF system, which will then send  the

document  and  a notification of such filing (NEF) to the following:

Kristin Starr
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
2100 Jameison Ave
Alexandria, VA 22314
*Counsel for the United States*

Edmund P. Power
King & Spalding LLP
1700 Pennsylvania Ave., NW
Washington, D.C. 20006
*Counsel for Defendant KPMG LLP*

  /s/Bryan Short
Bryan Short (VSB 68655)
Effectus PLLC
1101 Connecticut Avenue, NW, Suite 450
Washington, DC 20036
Tel: (202) 888-2107
Fax: 202-509-0262
BryanShort@effectus.legal